Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HUDSON RIVER WATERFRONT CONSERVANCY OF NEW JERSEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al.*, <br><br> Defendants. | Civil Action No.: 24-0748 (ES) (AME) <br><br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant New Jersey Department of Environmental Protection's ("NJDEP") motion to dismiss plaintiff The Hudson River Waterfront Conservancy of New Jersey's ("Plaintiff") complaint (D.E. No. 1 ("Complaint" or "Compl.")). (D.E. No. 12 ("Motion" or "Mot.")). Having considered the parties' submissions, and deciding this matter without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), for the reasons set forth below, the Court **GRANTS** the Motion.

**I.     BACKGROUND**[1]

Plaintiff is a non-profit 501(c)(3) entity with offices in Edgewater, New Jersey, who filed the instant lawsuit against defendants NJDEP, Edgewater MID LLC, Edgewater North LLC, and Edgewater South LLC (collectively, "Defendants"). (Compl. ¶¶ 2–4). Plaintiff brings this action

---
[1] The factual background is taken from the allegations in the Complaint. For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

"on behalf of the public to compel the Defendants to allow access to certain lands they own and lease on the Hudson River in Edgewater, New Jersey" under the Public Trust Doctrine, N.J. Stat. Ann. § 13:1D-150, *et. seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.* (*Id.* ¶ 1).

Plaintiff asserts NJDEP owns the land and riparian rights comprising Block 70, Lot 4.02, and Block 75, Lots 2.02 and 4.02, located at 725 River Road in Edgewater, New Jersey (the "Property"). (*Id.* ¶ 8). The Property allegedly consists of approximately 5.05 acres of land. (*Id.* ¶ 9). According to the Complaint, on or about June 1, 1977, NJDEP executed a lease of the Property to Jinep Company, a New Jersey partnership (the "Lease").[2] (*Id.* ¶ 10). The Lease allegedly reserves an easement "to provide for public access to the Hudson River" and "any and all covenants, conditions and limitations contained [t]herein [are] at all times subject to the Public Trust." (*Id.* ¶ 11).[3]

On April 4, 2001, the Lease was extended to run through May 31, 2037. (*Id.* ¶ 13). Thereafter, on July 24, 2017, a "Grant of Conservation Restriction/Easement for the Property" was

---

[2] NJDEP claims that it leases the Property to "Edgewater LLC" without acknowledging any discrepancy with the alleged lessee in the Complaint. (*Compare* D.E. No. 12-3 at 2, *with* Compl. ¶ 10).

[3] Paragraph 11 of the Complaint purports to quote page 225 of a document—presumably the Lease. (Compl. ¶ 11). Other paragraphs of the Complaint cite to photos D, E, F, G, H, I, and R, etc. (*Id.* ¶¶ 23–24). When Plaintiff filed the Complaint on February 8, 2024, it did not attach any exhibits thereto. However, over three months later, on May 10, 2024, Plaintiff filed eighteen (18) separate documents which purport to be exhibits to the Complaint. (D.E. No. 6 to D.E. No. 6-17). These exhibits, however, are not labeled with differentiating numbers or letters on the docket; nor do they contain exhibit cover sheets. In addition, Plaintiff did not file a declaration or an affidavit that explains what is depicted in each exhibit. For this reason alone, the Court may require Plaintiff to file an amended complaint with proper citations to properly labeled exhibits filed simultaneously with the amended complaint. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (acknowledging the inherent power of the district court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *see also Holt v. Pennsylvania*, No. 21-2635, 2022 WL 3657183, at *3 (3d Cir. Aug. 25, 2022) ("When a party fails to build his case, it is not the court's job to save him."). In light of the above, the Court interprets the allegations as set forth in the Complaint as best as it can decipher without reference to any non-labeled exhibits. Moreover, "[e]ven if the Court were to consider these belatedly filed exhibits, they are difficult to follow and do not add the factual support necessary to support [p]laintiff's claims and thus would not alter the analysis set forth above in which the Court found that [plaintiff's] [a]mended [c]omplaint must be dismissed." *See MacDougall v. Rhuling*, No. 24-0989, 2024 WL 3993213, at *10 n.10 (E.D. Pa. Aug. 28, 2024).

executed. (*Id.* ¶ 12). Plaintiff alleges that on November 10, 2021, the Lease was assigned and assumed by the "Marketplace." (*Id.* ¶ 14). The NJDEP, as owner of the Property, allegedly approved the "Assignment and Assumption." (*Id.*). The Complaint refers to the initial Lease and "all modifications, amendments, assignments and assumptions" collectively as the "Lease." (*Id.*). Pursuant to the "Assignment and Assumption," the Lease allegedly remains in full force and effect until its expected termination date of May 31, 2037. (*Id.* ¶ 15).

The Property includes a portion of the Hudson River Walkway (the "Walkway") located "[n]orth of the Property and end[ing] at the [n]orthern border of the Property." (*Id.* ¶ 16). NJDEP allegedly granted a Waterfront Development Permit to 615 River Road Partners, LLC to develop the land located south of the Property (referred to as the "615 WDP"). (*Id.* ¶ 17). The 615 WDP purportedly provides that 615 River Road Partners shall construct a portion of the Walkway south of Property. (*Id.* ¶ 18).

The Property allegedly includes (i) a series of retail stores and restaurants along the Hudson River (referred to as the "River Establishments"), and (ii) additional retail stores and restaurants that run perpendicular to the River Establishments. (*Id.* ¶ 19). A wooden boardwalk approximately twelve feet wide runs behind the River Establishments (the "Boardwalk"). (*Id.* ¶ 20). According to the Complaint, the Boardwalk does not connect to the Walkway located to the north of the Property and "there are no plans to connect the Boardwalk to the [expected] Walkway to the South of the Property when that portion of the Walkway is built." (*Id.* ¶ 21).[4]

Plaintiff alleges that the seven restaurants comprising the River Establishments have tables,

---

[4] Plaintiff further maintains that the Boardwalk is located "less than 5 feet above the mean high-water line and is interspersed with metal support beams which run perpendicular from the base of the River Establishments on the West to the Eastern edge of the Boardwalk on the East." (Compl. ¶ 22). Moreover, the "height of the Boardwalk and existence of the aforementioned metal support beams prevent the public from obtaining access to and along the mean high-water line." (*Id.*).

3

chairs, furniture, and other fixtures on the Boardwalk, which allegedly prevent the public from using the Boardwalk as part of the Walkway. (*Id.* ¶ 23). Plaintiff also maintains there is no wheelchair or handicapped access to the Boardwalk from the Walkway on the north side. (*Id.* ¶ 24). A ramp leads to a concrete platform, which leads to the south of the Boardwalk. (*Id.* ¶ 25). The "transition from the ramp to the platform has a series of lips which impede handicap accessibility." (*Id.*). In addition, Plaintiff asserts that "access to the ramp requires passage through [an] active truck loading area and solid waste dumpster area. (*Id.*). The platform also allegedly contains an electric utility box that provides only a three-foot wide passage area, which "prevents handicapped access past the electric utility box and to the Boardwalk." (*Id.*).

In light of the foregoing, Plaintiff filed this action on February 8, 2024, alleging a violation of the ADA. (*Id.* ¶¶ 31–34 & 37–39 (Count II)). Plaintiff also asserts a claim for an alleged violation of the Public Trust Doctrine based on Defendants' alleged blocking of access to and along the mean high-water line of the Hudson River Waterfront. (*Id.* ¶¶ 28 & 35–36 (Count I)). Plaintiff alleges it alerted "Defendants NJDEP and Marketplace"[5] of the alleged violation of the Public Trust Doctrine on several occasions beginning in May and July 2023. (*Id.* ¶ 29). Plaintiff asserts NJDEP has not recognized or allowed "public access [to the Hudson River Waterfront] pursuant to the [Public Trust Doctrine]" and has further failed to cause the "Marketplace," as its lessee and agent, "to allow such public access." (*Id.* ¶ 30).

On July 15, 2024, NJDEP moved to dismiss the Complaint, arguing that (i) Plaintiff lacks Article III and statutory standing under the ADA and thus, the Court lacks jurisdiction over

---

[5] It is unclear who or what the "Marketplace" refers to or whether Plaintiff intended to name it as a defendant in this action. In any event, the "Marketplace" does not appear as a defendant in the caption of Plaintiff's pleading. (S*ee* Compl.). In addition, Plaintiff has not filed a Civil Cover Sheet as directed in the Clerk's Quality Control Message dated February 8, 2024. Accordingly, in the event Plaintiff chooses to file an amended pleading, it shall file a Civil Cover Sheet in accordance with the applicable Federal and Local Civil Rules.

Plaintiff's state law claim under the Public Trust Doctrine; and (ii) Plaintiff's claims against NJDEP are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution. (Mot.; *see generally* D.E. No. 12-3 ("Mov. Br.")). On July 24, 2024, defendants Edgewater MID LLC, Edgewater North LLC, and Edgewater South LLC filed a letter seeking to join the entirety of NJDEP's motion to dismiss except for NJDEP's argument on Eleventh Amendment immunity. (D.E. No. 16 at 2). On August 7, 2024, Plaintiff opposed (D.E. No. 17 ("Opp. Br.")), and on August 12, 2024, the NJDEP replied (D.E. No. 18 ("Reply Br.")).

**II.     LEGAL STANDARDS**

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223,

5

230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

A motion to dismiss for lack of standing "is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)) (internal quotations and alterations omitted). The standard for evaluating a motion under Rule 12(b)(1) is the same as that for a motion brought under Rule 12(b)(6). That is, the Court must accept as true all material allegations set forth in the complaint and construe the facts in favor of the non-moving party. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Phillips*, 515 F.3d at 231.

### III. DISCUSSION

Defendants argue that Plaintiff lacks both Article III and statutory standing to assert a claim under the ADA (Count II) and, consequently, the Court need not exercise supplemental jurisdiction

6

over Plaintiff's state law claim under the Public Trust Doctrine (Count I).  (Mov. Br. at 5).  For the reasons set forth below, the Court agrees with Defendants.

### A. Article III Standing (Count II)

To establish standing, a plaintiff must allege that he or she has "suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484 (3d Cir. 1998) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  A plaintiff must also show "a causal connection between the injury and the conduct complained of–the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (alterations in original) (internal quotations omitted).  In addition, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561 (internal quotations omitted).  Finally, a plaintiff must assert "her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."  *Powers v. Ohio*, 499 U.S. 400, 410 (1991).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

With respect to suits brought by organizations, federal courts recognize standing in two instances: (i) where the organization itself suffered an injury and wants to vindicate its own rights; and (ii) as a representative of its individual members when the individual members themselves have standing to bring the same claims.  *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162–63 (3d Cir. 2007); *see also Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005).  Here, Plaintiff, a non-profit entity, does not have standing under either theory.

First, with respect to standing to sue in its own right, Plaintiff failed to plead any facts in

support of organizational standing. (*See generally* Compl.). Indeed, Plaintiff does not appear to argue that it suffered an injury. (*See id.*). Rather, Plaintiff maintains that "the public has suffered damages" in light of Defendants' alleged violation of the ADA. (*See id.* ¶ 39). Thus, "there can be no standing for [Plaintiff] to sue to vindicate its own rights." *See Pavlak v. SBKFC*, No. 15-1944, 2015 WL 9049344, at *2 (D.N.J. Dec. 16, 2015) (finding no organizational standing where Advocates for Disabled Americans "pleaded no facts to support such a finding").

Second, Plaintiff has not established standing to sue in a representative capacity on behalf of its members. To establish standing in a representative capacity, an organization must show "(1) its members would otherwise have standing to sue in their own right; (2) the interests the suit seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members in the lawsuit." *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Relevant here, the Third Circuit has explained that "the plaintiff organization must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm.'" *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). Plaintiff has not alleged the identity of any member who has suffered an injury as a result of Defendants' purported conduct. (*See generally* Compl.). Nor does Plaintiff argue as much in opposing the Motion. (*See* Opp. Br. at 10). As noted above, Plaintiff merely claims that the public has suffered damages from Defendants' alleged actions. (*See* Compl. ¶ 39; *id.* ¶ 1 (stating that Plaintiff "brings this action on behalf of the public" generally); *id.* ¶¶ 22–23 (claiming that Defendants' actions prevent "the public" from "obtaining access to and along the mean high-water line" and "from being able to use the Boardwalk as part of the Walkway")); *see also Save Long Beach Island v. U.S. Dep't of Com.*, 721 F. Supp. 3d 317,

335 (D.N.J. 2024) (finding no associational standing where plaintiff failed to show that "the only member of Save LBI referenced in the [c]omplaint, . . . suffered an injury-in-fact" and failed to discuss "any additional . . . members of the organization").[6]

In addition, Plaintiff has not alleged, under the second prong of Article III standing for organizational entities, that the interests it seeks to protect are germane to its purpose. In opposing the Motion, Plaintiff asserts, without citing to the Complaint, that it is "an organization dedicated to serving those who are seeking access to the Hudson River's waterfront." (Opp. Br. at 10). However, the Complaint is devoid of any similar allegations regarding Plaintiff's organizational purpose. (*See generally* Compl.). Instead, the Complaint merely describes Plaintiff as a non-profit entity. (*See id.* ¶ 2). Relevant here, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Ibrahim v. DeFilippo*, No. 19-5021, 2021 WL 753898, at *8 (D.N.J. Feb. 26, 2021) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

Because Plaintiff failed to demonstrate Article III standing, Plaintiff's ADA claim (Count II) is **DISMISSED** *without prejudice* for lack of subject matter jurisdiction. Accordingly, the

---

[6] For the same reasons, the Court also agrees that Plaintiff has not established standing under Title II or Title III of the ADA. (*See* Mov. Br. at 13–15). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA "prohibits discrimination ***on the basis of disability*** in public accommodations." *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) (emphasis added). Because an entity cannot be "disabled" under the ADA, it "is entitled to bring suit pursuant to the ADA only if it can establish discrimination based on its association with disabled persons." *RHJ Med. Ctr., Inc. v. City of DuBois*, 564 F. App'x 660, 664 (3d Cir. 2014) ("Thus, for an entity . . . to succeed on its claims, it must establish ***an association with an individual*** who is 'disabled' as that term is defined in the statute." (emphasis added)). As noted above, Plaintiff has not alleged that any of its members are disabled under the ADA; indeed, Plaintiff has not alleged any particularized facts with respect to any of its members. (*See generally* Compl.). Although Plaintiff argues that it asserted its "individual members" have "access issues" (Opp. Br. at 13–14), it did not cite to, nor could this Court locate, any allegations in the Complaint establishing as much. Accordingly, Plaintiff does not have statutory standing to bring its ADA claim. *See, e.g.*, *Louisiana Counseling & Fam. Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2011 WL 3273548, at *5 (D.N.J. July 27, 2011) ("Brown has not established her own standing and the Complaint fails to allege sufficient facts as to the other individual members of LCFS and Access to All to confer standing on these organizations. Although the Complaint generally alleges that the members of these organizations qualify as disabled under the ADA, this alone does not demonstrate that the members all possess 'standing to sue in their own right.'").

Court declines to address Defendants' remaining arguments with respect to Plaintiff's claim under the ADA. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155–56 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so.").

### B. Supplemental Jurisdiction

Having dismissed all federal claims alleged in the Complaint for lack of subject matter jurisdiction, the Court cannot exercise supplemental jurisdiction over Plaintiff's remaining state law claim under the Public Trust Doctrine (Count I). *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 299–300 (3d Cir. 2003) ("[B]ecause the Storinos lack standing, the District Court lacked original jurisdiction over the federal claim, and it therefore could not exercise supplemental jurisdiction [over state law matters]." (first citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); and then citing *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995))); *see also Dervitz v. ARS Nat'l Servs. Inc.*, No. 22-3090, 2024 WL 1173739, at *1 (3d Cir. Mar. 19, 2024) ("Dervitz . . . lack[ed] standing to maintain her FDCPA claim in federal court and, as a result" the Third Circuit "and the District Court lack[ed] supplemental jurisdiction over her pendent state-law claims.").[7] Therefore, Count I of the Complaint is **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED** *without prejudice*. An appropriate Order accompanies this Opinion.

---

[7] The Court also appears to lack original jurisdiction over the remaining state law claim because "[f]or diversity jurisdiction to lie, there must be 'complete diversity' amongst the parties;" and complete diversity "means that the plaintiff cannot be a citizen of the same state as any of the defendants." *See Fink v. Kirchner*, 731 F. App'x 157, 159 n.4 (3d Cir. 2018). Here, Plaintiff appears to allege that all parties are citizens of New Jersey. (*See* Compl. ¶¶ 2–4). Thus, the Court does not have diversity jurisdiction over Count I.

Dated: March 31, 2025                                                s/ *Esther Salas*
                                                                     **Esther Salas, U.S.D.J.**