**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THE HUDSON RIVER WATERFRONT CONSERVANCY OF NEW JERSEY, INC.,** ***et al.*****,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION,** ***et al.*****,**<br><br>**Defendants.** | **Civil Action No.: 24-0748 (ES) (AME)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant New Jersey Department of Environmental Protection's ("NJDEP") motion to dismiss plaintiff The Hudson River Waterfront Conservancy of New Jersey's ("Hudson") and plaintiff Jessica Frew's ("Ms. Frew") (together, "Plaintiffs") second amended complaint (D.E. No. 55 ("Second Amended Complaint" or "SAC")). (D.E. No. 57 ("Motion" or "Mot.")). Defendants Edgewater MID LLC, Edgewater North LLC, and Edgewater South LLC (together, "Edgewater") joined the Motion in part. (D.E. No. 58). Having considered the parties' submissions and deciding this matter without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), for the reasons set forth below, the Court **GRANTS** the Motion. The Second Amended Complaint is **DISMISSED** *without prejudice*.

# I. BACKGROUND[1]

## A. Factual Background

Hudson is a non-profit 501(c)(3) entity with offices in Edgewater, New Jersey, which initially filed this lawsuit against defendants NJDEP, Edgewater MID LLC, Edgewater North LLC, and Edgewater South LLC (collectively, "Defendants"). (D.E. No. 1 ¶¶ 2–4; SAC ¶¶ 2–4). Ms. Frew is "severely handicapped and has cerebral palsy and is confined to a wheelchair." (SAC ¶ 5). Plaintiffs bring this action "on behalf of the public and . . . [Ms. Frew] to compel the Defendants to allow access to certain lands they own and lease on the Hudson River in Edgewater, New Jersey" under the Public Trust Doctrine, N.J. Stat. Ann. § 13:1D-150, *et. seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq*. (*Id.* ¶ 1).

Plaintiffs assert NJDEP owns the land and riparian rights comprising Block 70, Lot 4.02, and Block 75, Lots 2.02 and 4.02, located at 725 River Road in Edgewater, New Jersey (the "Property"). (*Id.* ¶ 9). The Property allegedly consists of approximately 5.05 acres of land. (*Id.* ¶ 10). On or about June 1, 1977, NJDEP allegedly leased the Property to Jinep Company, a New Jersey partnership (the "Lease").[2] (*Id.* ¶ 11). Plaintiffs allege the Lease reserves an easement "to provide for public access to the Hudson River" and "any and all covenants, conditions and limitations contained [t]herein [are] at all times subject to the Public Trust." (*Id.* ¶ 12).[3]

---

[1] The factual background is taken from the allegations in the Second Amended Complaint. For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] NJDEP claims that it initially leased the property to Jinep Company, but the lease was assigned to Edgewater LLC. (D.E. No. 57-1 ("Mov. Br.") at 4). NJDEP also appears to identify different Block and Lot numbers for the property in question. (*Id.*). For the purposes of this motion, the Court accepts Plaintiffs' factual allegations as true. *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).

[3] As this Court noted in its Opinion dismissing the Complaint, (D.E. No. 26), there have been issues with the proper filing and labeling of exhibits to the complaints. The Second Amended Complaint, like the Complaint, references various exhibits. (*See, e.g.*, SAC ¶ 15, 23, 24, 25, 26, 34). When Plaintiff Hudson filed the Complaint on February 8, 2024, it did not attach any exhibits thereto. However, over three months later, on May 10, 2024, Plaintiff filed eighteen (18) separate documents which purport to be exhibits to the Complaint. (D.E. Nos. 6 to 6-17). These exhibits, however, were not labeled with differentiating numbers or letters on the docket; nor did they contain exhibit cover sheets. In addition, Plaintiff did not file a declaration or an affidavit that explained what was depicted in each

On April 4, 2001, the Lease was extended to run through May 31, 2037. (*Id.* ¶ 14). Thereafter, on July 24, 2017, a "Grant of Conservation Restriction/Easement for the Property" was executed. (*Id.* ¶ 13). Plaintiff alleges that on November 10, 2021, the Lease was assigned and assumed by the "Marketplace." (*Id.* ¶ 15). The NJDEP, as owner of the Property, allegedly approved the "Assignment and Assumption." (*Id.*). The SAC refers to the initial Lease and "all modifications, amendments, assignments and assumptions" collectively as the "Lease." (*Id.*). Pursuant to the "Assignment and Assumption," the Lease allegedly remains in full force and effect until its expected termination date of May 31, 2037. (*Id.* ¶ 16).

A portion of the Hudson River Walkway (the "Walkway") is located "[n]orth of the Property and end[ing] at the [n]orthern border of the Property." (*Id.* ¶ 17). NJDEP allegedly granted a Waterfront Development Permit to 615 River Road Partners, LLC to develop the land located south of the Property (referred to as the "615 WDP"). (*Id.* ¶ 18). The 615 WDP purportedly provides that 615 River Road Partners shall construct a portion of the Walkway south of Property. (*Id.* ¶ 19).

The Property allegedly includes (i) a series of retail stores and restaurants along the Hudson River (referred to as the "River Establishments"), and (ii) additional retail stores and restaurants that run perpendicular to the River Establishments. (*Id.* ¶ 20). A wooden boardwalk approximately twelve feet wide runs behind the River Establishments (the "Boardwalk"). (*Id.* ¶ 21). According to the SAC, the Boardwalk does not connect to the Walkway located to the north of the Property and "there are no plans to connect the Boardwalk and the [expected] Walkway to

---

exhibit. When Plaintiffs filed the Amended Complaint on April 29, 2025, this time Plaintiffs did include a declaration detailing a description and purpose for each exhibit and including exhibit cover sheets. (D.E. Nos. 31 to 31-1). However, upon filing the operative pleading, the Second Amended Complaint, Plaintiffs did not simultaneously refile the exhibits. (*See generally* SAC). In the interest of judicial efficiency, the Court will consider the exhibits Plaintiffs previously filed as attachments to the Amended Complaint. (D.E. Nos. 31 to 31-1). Should Plaintiffs file another amended complaint, Plaintiffs must contemporaneously file properly labeled copies of all exhibits referenced therein.

the South of the Property when that portion of the Walkway [is] built." (*Id.* ¶ 22). Plaintiff further maintains that the Boardwalk is located "less than five (5) feet above the mean high-water line and [is] interspersed with metal support beams which run perpendicular from the base of the River Establishments on the West to the Eastern edge of the Boardwalk on the East." (*Id.* ¶ 23). Moreover, the "height of the Boardwalk and existence of the aforementioned metal support beans [sic] prevent the public from obtaining access to and along the mean high-water line." (*Id.*).

Plaintiff alleges that the seven restaurants comprising the River Establishments have tables, chairs, furniture, and other fixtures on the Boardwalk, which allegedly prevent the public from using the Boardwalk as part of the Walkway. (*Id.* ¶ 24). Plaintiff also maintains there is no wheelchair or handicapped access to the Boardwalk from the Walkway on the north side. (*Id.* ¶ 25). A ramp leads to a concrete platform, which leads to the south of the Boardwalk. (*Id.* ¶ 26). The "transition from the ramp to the platform has a series of lips which impede handicap accessibility." (*Id.*). In addition, Plaintiff asserts that "access to the ramp requires passage through [an] active truck loading area and sold [sic] waste dumpster area." (*Id.*). The platform also allegedly contains an electric utility box that provides only a three-foot wide passage area, which "prevents handicapped access past the electric utility box and to the Boardwalk." (*Id.*).

**B. Procedural History**

Plaintiff Hudson filed this action on February 8, 2024, alleging a violation of the Public Trust Doctrine and a violation of the ADA, based on Defendants' alleged blocking of access to and along the mean high-water line of the Hudson River Waterfront. (D.E. No. 1 ¶ 35–39). In its initial complaint and subsequent amended complaints, Plaintiff Hudson alleges it alerted

"Defendants NJDEP and Marketplace"[4] of the alleged violation of the Public Trust Doctrine on several occasions beginning in May and July 2023. (*Id.* ¶ 29; SAC ¶ 30). Plaintiffs assert NJDEP has not recognized or allowed "public access [to the Hudson River Waterfront] pursuant to the [Public Trust Doctrine]" and has further failed to cause the "Marketplace," as its lessee and agent, "to allow such public access." (D.E. No. 1 ¶ 30; SAC ¶ 31).

On July 15, 2024, NJDEP moved to dismiss the Complaint, arguing that (i) Plaintiff lacks Article III and statutory standing under the ADA and thus, the Court lacks jurisdiction over Plaintiff's state law claim under the Public Trust Doctrine; and (ii) Plaintiff's claims against NJDEP are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution. (*See generally* D.E. No. 12-3). On July 24, 2024, Edgewater filed a letter seeking to join the entirety of NJDEP's motion to dismiss except for NJDEP's argument on Eleventh Amendment immunity. (D.E. No. 16 at 2). On August 7, 2024, Plaintiff filed an opposition brief (D.E. No. 17), and on August 12, 2024, the NJDEP filed a reply submission, (D.E. No. 18). On March 31, 2025, the Court issued an Opinion and Order granting the motion to dismiss without prejudice. (D.E. Nos. 26 ("Opinion") & 27).

On April 29, 2025, Plaintiffs filed an Amended Complaint, adding Jessica Frew as a plaintiff and filing a declaration of exhibits and exhibits to the Complaint labeled with slipsheets. (D.E. Nos. 31 & 31-1). Defendants filed a second motion to dismiss, (D.E. No. 35), and the parties briefed that motion (D.E. Nos. 37 & 38). Then, on August 14, 2025, Plaintiffs filed a letter with the Court correcting an error in the amended complaint and brief in opposition to Defendants' second motion to dismiss, clarifying that Plaintiff Jessica Frew is not a member of Plaintiff

[4] It is unclear who or what the undefined term "Marketplace" refers to or whether Plaintiff intended to name it as a defendant in this action. In any event, the "Marketplace" does not appear as a defendant in the caption of either the initial complaint or subsequent amended complaints. (*See* D.E. No. 1; D.E. No. 31; SAC).

Hudson, as was originally stated in those amended pleadings. (D.E. No. 43). After an unsuccessful mediation, the Court ordered Plaintiffs to file (in redlined format) a proposed amended complaint rectifying the allegations as to Ms. Crew's membership in Hudson. (D.E. No. 51). Plaintiffs filed a redlined amended complaint, (D.E. No. 53), the Court accepted Plaintiffs' proposed edits and directed them to formally file their amended pleading on the docket, (D.E. No. 54). Plaintiffs filed the SAC—their current operative pleading—on November 25, 2025. (*See generally* SAC). On December 11, 2025, NJDEP filed another motion to dismiss, (D.E. No. 57 ("Mot.")). On December 12, 2025, Edgewater again filed a letter seeking to join the entirety of NJDEP's motion to dismiss except for NJDEP's argument on Eleventh Amendment immunity. (D.E. No. 58 at 2). On December 22, 2025, Plaintiffs opposed the motion to dismiss (D.E. No. 59), and on December 29, 2025, the NJDEP replied (D.E. No. 60).

## II. LEGAL STANDARDS

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys.*, 908 F.3d at 878. However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when

deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)) (internal quotations and alterations omitted). A motion to dismiss under Rule 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999). When ruling on such a motion, a distinction must be made between a facial and factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion is limited to a facial attack, "the court looks

only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). On the other hand, when the Rule 12(b)(1) motion involves a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

Here, Defendants' motion involves a purely facial attack, as their standing arguments are based solely on the sufficiency of Plaintiffs' allegations. (*See* Mov. Br. at 8–19). As noted above, the standard for evaluating a facial challenge under Rule 12(b)(1) is the same as that for a motion brought under Rule 12(b)(6). *Atkinson*, 473 F.3d at 514. That is, the Court must accept as true all material allegations set forth in the complaint and construe the facts in favor of the non-moving party. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Phillips*, 515 F.3d at 231.

Finally, the Court notes that where, as here, "a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

## III. DISCUSSION

Defendants argue that even with the amendments, Plaintiffs still lack Article III standing to assert a claim under the ADA (Count II) and, consequently, the Court need not exercise supplemental jurisdiction over Plaintiffs' state law claim under the Public Trust Doctrine (Count I). (Mov. Br. at 1). For the reasons set forth below, the Court agrees with Defendants.

### A. Article III Standing (Count II)

To establish standing, a plaintiff must allege that he or she has "suffered an injury in fact—

an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.]" *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484 (3d Cir. 1998) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The standing analysis in ADA cases focuses on whether the plaintiff suffered an actual injury rather than whether the statute was violated by the defendants." *Abbott v. Atl. City*, No. 11-4851, 2017 WL 1137441, at *14 (D.N.J. Mar. 27, 2017) (citing *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 152–153 (3d Cir. 1999)). A plaintiff must also show "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (internal quotations and citations omitted). In addition, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted). Finally, a plaintiff must assert "her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. The general requirements of standing are applicable in ADA cases where Plaintiffs intend to bring suit under Title II. *See Abbott*, 2017 WL 1137441, at *14 (internal citations omitted).

With respect to suits brought by organizations, federal courts recognize standing in two instances: (i) where the organization itself suffered an injury and wants to vindicate its own rights; and (ii) as a representative of its individual members when the individual members themselves have standing to bring the same claims. *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162–63 (3d Cir.

2007).

**i. Plaintiff Hudson**

Hudson has failed to allege either direct organizational standing or representational standing. The Court first considers organizational standing, or Hudson's standing to sue in its own right. An entity has direct organizational standing when the organization itself suffers injuries as a result of the defendant's allegedly unlawful conduct. *Pa. Prison Soc'y*, 508 F.3d at 163. Hudson alleges it is an advocacy organization, and that "[t]he injustice of disabled individuals not having access to portions of the walkway has caused Hudson to commence this action and divert resources toward correcting the injustice." (Opp. Br. at 9–10). But the diversion of resources to litigation in support of an organization's mission is not sufficient to confer Article III standing. *See Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998). Hudson has not adequately alleged that the Defendants' actions "perceptibly impair" the entity's ability to provide services. *See Kendrick v. Bruck*, 586 F. Supp. 3d 300, 311 (D.N.J. 2022) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014)). Alleging no other facts in support of injury to the entity itself and in support of Hudson's ability to sue in its own right, Hudson has failed to plead organizational standing.

Nor has Hudson adequately demonstrated standing to sue in a representative capacity on behalf of its members. To establish standing in a representative capacity, an organization must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Third Circuit has explained that, in order to meet the first prong for representational

standing, "the plaintiff organization must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm.'" *Blunt*, 767 F.3d at 280 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). Even with their amendments, Plaintiffs again fail to adequately allege facts sufficient to satisfy the first prong necessary for representational standing. In its Opposition to the motion, Plaintiffs argue that Hudson has standing because Hudson's disabled members have standing to sue in their own right. (Opp. Br. at 9). As an initial matter, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olson v. Ako*, 724 F. App'x. 160, 166 (3d Cir. 2018) (citation omitted). "As the Third Circuit has explained, 'it is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.'" *Save Long Beach Island v. U.S. Dept. of Com.*, 721 F. Supp. 3d 317, 335 (D.N.J. 2024) (quoting *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016)). In any event, Hudson does not identify any disabled members and does not allege any facts supporting a claim that any of its members have suffered any injury.[5] Hudson argues that its "disabled members, who are unable to access the Property, have suffered a concrete injury-in-fact based on the known (and undisputed) condition of the Property." (Opp. at 9). But this conclusory statement that members "have suffered a concrete injury-in-fact based on the known (and undisputed) condition of the Property" is supported by no additional facts about what the injury entails or whether the injury was experienced as a result of Defendants' conduct. For example, Plaintiffs do not allege that Hudson's disabled members have "personally experienced" any "actual physical difficulty in ambulating through . . . facilities which are allegedly not ADA-

[5] Plaintiffs state that "Frew, a member of Hudson, alleged that she suffers from disabilities that are the type protected by the ADA" and that "[a]s such, Hudson's members would have standing to sue on their own behalf." (Opp. at 11). But as Plaintiffs have already clarified, Ms. Frew is not a member of Hudson. (D.E. Nos. 50, 53, & 55). And even if Ms. Frew was a member of Hudson, having a "disabilit[y] that [is] the type protected by the ADA" is not enough to adequately allege concrete and particularized injury-in-fact, traceability, and redressability, as is required for Article III standing.

compliant." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (finding plaintiffs' allegations of personally experienced, actual physical difficulty constituted concrete harm sufficient for standing in ADA case). Indeed, Plaintiffs fail to show that Hudson's members face any actual or imminent injury at all. Because Hudson has not alleged that any of its members have suffered injury in fact enabling them to sue in their own right, Hudson has failed to plead representational standing. *See Save Long Beach Island*, 721 F. Supp. 3d at 335 (finding no associational standing where plaintiff failed to show that "the only member of Save LBI referenced in the [c]omplaint, . . . suffered an injury-in-fact" and failed to discuss "any additional . . . members of the organization"). Furthermore, as noted in this Court's Opinion granting Defendants' first motion to dismiss, to the extent Plaintiffs continue to bring claims "on behalf of the public," these allegations do not provide the basis for Article III standing. (*See* Opinion at 8; *see* SAC ¶ 1, 37).

Because Plaintiffs fail to adequately allege the first prong as needed for representational standing, the Court will not examine the second and third prongs of representational standing. Plaintiffs have failed to demonstrate Article III standing in either an organizational or representational capacity, and thus, Plaintiff Hudson's ADA claim must be dismissed for lack of subject matter jurisdiction.

**ii. Plaintiff Ms. Frew**

The Court next considers whether Plaintiff Ms. Frew has adequately alleged Article III standing to assert a claim under the ADA. Plaintiffs allege that Ms. Frew "is severely handicapped and has cerebral palsy and is confined to a wheelchair." (SAC ¶ 5). As discussed above, to establish Article III standing, an individual plaintiff must allege that he or she has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.]" *Trump Hotels*, 140 F.3d at 484 (3d

Cir. 1998) (citing *Lujan*, 504 U.S. at 560–61). "The standing analysis in ADA cases focuses on whether the plaintiff suffered an actual injury rather than whether the statute was violated by the defendants." *Abbott*, 2017 WL 1137441, at *14. A plaintiff must also show "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (internal quotations omitted). In addition, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted).

Plaintiffs set forth various allegations about the Property at issue but fail to demonstrate that Ms. Frew has Article III standing to bring a claim under ADA Title II. Plaintiffs allege that the failure to connect the Boardwalk to the Walkway "denies persons with disabilities from gaining access to the Boardwalk including but not limited to Plaintiff Jessica Frew." (SAC ¶ 32). Plaintiffs also allege that "handicapped persons including Plaintiff Jessica Frew are subjected to the unsafe and malodorous conditions which non- handicapped persons are not forced to suffer." (*Id.* ¶ 33). Plaintiffs state that Ms. Frew has "suffered damages in an amount to be determined at trial." (*Id.* ¶ 40). These allegations do not adequately demonstrate that Ms. Frew has personally suffered concrete and particularized injury that is actual or imminent. The SAC provides no facts regarding Ms. Frew's prior attempts to access the Boardwalk. (*See generally* SAC; *see also* Mot. at 7). Nor does the SAC ever allege that Ms. Frew intends to visit the Property in the future. *See Lasky v. Camden Cnty.*, No. 09-4338, 2010 WL 323220 (D.N.J. Jan. 20, 2010), at *4 (finding plaintiff adequately alleged standing under Title II in claiming that he was a "frequent user" of the city's facilities and services and alleged that he had "that he has attempted to fully access these facilities

and services in the past and intends to return to the City and County of Camden to do so in the future"); *see also Abbott*, 2017 WL 1137441, at *15 (granting summary judgment as to Title II claim under the ADA where plaintiff only alleged a generalized statement of interest in returning to location with alleged ADA violations, rather than specific intent to return). Nor does the SAC include any allegations that demonstrate how Ms. Frew is aware of the Property conditions. Without any facts establishing that Ms. Frew either previously visited the Property, or plans to do so in the future, Plaintiffs' statement that Ms. Frew might be "subjected to . . . unsafe and malodorous conditions" is "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560.[6]

If a Plaintiff lacks Article III standing, the Court lacks jurisdiction, and must dismiss the claim pursuant to Rule 12(b)(1). *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 356–357 (3d Cir. 2014) (citing *Lujan*, 504 U.S. 555, 559–60 (1992)). Because Plaintiffs have failed to demonstrate Article III standing as to *any* named plaintiff, their ADA claim (Count II) is **DISMISSED** *without prejudice* for lack of subject matter jurisdiction. Accordingly, the Court declines to address Defendants' remaining arguments with respect to Plaintiffs' ADA claims. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It

[6] In opposing the Motion to Dismiss, Plaintiffs argue that they are not required "to make a 'futile gesture' of attempting to access the Property when they are aware of the condition of the Property and are aware that Plaintiffs cannot reasonably access same due to the lack of appropriate accommodations." (Opp. at 13). But as Plaintiffs acknowledge, Title II of the ADA lacks the "futile gesture" language Plaintiffs pull from Title III of the ADA. Plaintiffs merely "submit that the reasoning behind the Title III language should be similarly applicable to Title II claims." (Opp. at 13, n.2). As Plaintiffs have not established that the Third Circuit has ever applied this Title III-specific language to Title II claims, the Court declines to adopt Plaintiffs' reasoning here. Furthermore, in the case Plaintiffs cite for this proposition, *Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003), Plaintiff Clark had visited the public accommodations that he claimed violated the ADA. Plaintiffs in this case make no claim that Ms. Frew (or any member of Hudson) has ever visited the Property at issue, has any future plans to do so, or would visit the property but for the alleged ADA violation.

has no authority to do so.”).

**iii. Supplemental Jurisdiction**

Having dismissed all federal claims alleged in the Complaint for lack of subject matter jurisdiction, the Court cannot exercise supplemental jurisdiction over Plaintiffs’ remaining state law claim under the Public Trust Doctrine (Count I). *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 299–300 (3d Cir. 2003) (“[B]ecause the Storinos lack standing, the District Court lacked original jurisdiction over the federal claim, and it therefore could not exercise supplemental jurisdiction [over state law matters]” (first citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); and then citing *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995)); *see also Dervitz v. ARS Nat’l Servs. Inc.*, No. 22-3090, 2024 WL 1173739, at *1 (3d Cir. Mar. 19, 2024) (“Dervitz . . . lack[ed] standing to maintain her FDCPA claim in federal court and, as a result” the Third Circuit “and the District Court lack[ed] supplemental jurisdiction over her pendent state-law claims.”).[7] Therefore, Count I of the Complaint is **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

**iv. Leave to Amend**

In the interest of justice, the Court will provide Plaintiffs a *final* opportunity to cure the deficiencies described herein and establish standing. If Plaintiffs fail to do so, the Court will direct

[7] The Court also appears to lack original jurisdiction over the remaining state law claim because “[f]or diversity jurisdiction to lie, there must be ‘complete diversity’ amongst the parties[;]” and complete diversity “means that the plaintiff cannot be a citizen of the same state as any of the defendants.” *See Fink v. Kirchner*, 731 F. App’x 157, 160 n.4 (3d Cir. 2018). Here, Plaintiffs appear to allege that all parties are citizens of New Jersey. (*See* SAC ¶¶ 2–5). Thus, the Court does not have diversity jurisdiction over Count I.

the Clerk of the Court to close this matter. There will be no further opportunities for amendment to cure standing issues.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** and Plaintiffs' Complaint is **DISMISSED** *without prejudice*. The Court will provide Plaintiffs a final opportunity to amend their pleading to cure the standing-related deficiencies described herein. If Plaintiffs fail to cure the deficiencies set out in this Opinion, the Court will direct the Clerk of Court to close this matter. An appropriate Order accompanies this Opinion.

Dated: September 30, 2026

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**